## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| JASON M. SCHUPP, on his own behalf and for the benefit of others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. CBB 22-cv-714 |
| vs. | )<br>) |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR REMAND

Defendants filed a Notice of Removal on March 23, 2022, citing the Class Action Fairness Act ("CAFA"), Pub. L. 109-2, codified at 28 U.S.C. § 1332(d), as the sole basis for removal jurisdiction. In doing so, Defendants characterized the Complaint filed in the Circuit Court for Frederick County, Maryland as a "putative class action". Notice of Removal at ¶ 1. It is not.

### I. The Class Action Fairness Act

CAFA extends federal jurisdiction to "class actions" in which the matter in controversy exceeds $5,000,000 and at least one class member is a citizen of a State different from the defendant. *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). In the context of CAFA:

> [T]he term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.
>
> 28 U.S.C § 1332(d)(1)(B).

The Fourth Circuit has held that a "class action" as defined by CAFA is an action based on the state equivalent of Federal Rule 23. *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646

F.3d 169, 174 (4th Cir. 2011), *cert. denied* 132 S.Ct. 761 (2011). In *CVS Pharmacy*, the defendants alleged that the State of West Virginia had used consumer protection statutes to prosecute a "disguised class action" thereby evading CAFA's removal provision. The Court rejected this argument:

> While the statutory definition is, to some degree, circular, Congress undoubtedly intended to define "class action" in terms of its similarity and close resemblance to Rule 23.
>
> At its essence, Rule 23 provides that "one or more members of a class may sue or be sued as representative parties on behalf of all members *only if*" the criteria for numerosity, commonality, typicality, and adequacy of representation are satisfied. Fed.R.Civ.P. 23(a) (emphasis added). Without this representative nature of the plaintiffs' action and the action's satisfaction of the four criteria stated in Rule 23(a), the action is not a class action.
>
> *CVS Pharmacy*, 646 F.3d at 174.

The Fourth Circuit's understanding that CAFA only extends to actions based on a state rule or statute satisfying the criteria of Rule 23 is widely shared. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 214 (2d Cir. 2013); *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3rd Cir. 2013); *Nessel v. Amerigas Partners, L.P.*, 954 F.3d 831, 835 (6th Cir. 2020); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1124 (9th Cir. 2014); *and cf. Williams v. Emp'rs Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017) (finding CAFA jurisdiction over garnishment action brought by certified class representative to enforce a judgment obtained in a state class action proceeding).

The party removing an action to federal court bears the burden of establishing that jurisdiction is appropriate. *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296–97 (4th Cir.2008). Accordingly, it is incumbent upon Defendants to direct this Court to a Maryland statute or rule of judicial procedure upon which Plaintiff has proposed to represent a class satisfying the criteria of numerosity, commonality, typicality, and adequacy of representation.

Rule 2-231 is certainly Maryland's equivalent to Federal Rule 23. However, the Complaint does not reference Rule 2-231 nor does the Complaint purport to bring an action that could be fairly characterized as fitting within Rule 2-231. The Complaint designates no representative party, defines no represented class, and requests no certification as a class action.[1]

The only reference to a potential class action exists in ¶ 5 of the Complaint wherein Plaintiff advises that if a class action becomes necessary to achieve the relief requested, Plaintiff would retain counsel and amend the complaint accordingly.[2] *See Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 852 (9th Cir. 2020) (reasoning that labels and allegations in a complaint do not transform a cause of action into a removable "class action" under CAFA). Should Plaintiff amend the Complaint in such a manner, perhaps at that time Defendants may be able to satisfy the requirements for removal under CAFA. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (reasoning "CAFA, however, permits the federal court to consider only the complaint that the plaintiff has filed, i.e., this complaint, not a new, modified (or amended) complaint that might eventually emerge").

## II. Offensive Non-Mutual Collateral Estoppel

Defendants' confusion likely arises from Plaintiff's open and transparent intention that any favorable judgement in this action shall equally benefit his fellow USAA members. Specifically, Plaintiff seeks to secure complete justice by creating an offensive non-mutual collateral estoppel.

---

[1] One of the casualties of self-representation is effective proof reading, especially of case captions it seems. Defendants have noted a typographical error in the name of the first named Defendant. Plaintiff now identifies an "s" at the end "Plaintiff" in the original caption. The term "Plaintiff" is used in the singular otherwise throughout the Complaint.

[2] Out of an abundance of caution, Plaintiff has commenced a Request for Proposal (RFP) process to identify potential class counsel should this Court deem the Complaint a Rule 2-231 action or on remand the Circuit Court requires that the matter proceed under Rule 2-231.

It is upon this equitable doctrine – not Maryland Rule 2-231 – that Plaintiff grounds his prayer for a broad-based declaration and injunction.

Collateral estoppel arises when an issue of law or fact (a) has been actually litigated; (b) determined by a valid and final judgement; and (c) the determination is essential to the judgment. *Garrity v. Maryland State Board of Plumbing*, 447, Md. 359, 368, 135 A.3d 452, 458 (Md. 2016). Traditionally, collateral estoppel has been confined to the parties to the original litigation or those in privity. *Id.* The doctrine of <u>non-mutual</u> collateral estoppel developed to promote judicial economy where a new litigant engages with another that previously had a full and fair opportunity for judicial resolution of an issue essential to both the prior and current actions and lost. *Parklane Hosiery Company, Inc v. Shore*, 439 U.S. 322, 326-328 (1979).[3]

Non-mutual collateral estoppel does carry certain risks for the party against whom it is asserted. *Parklane*, 439 U.S. at 329-331. In *Garrity*, the Court of Appeals emphasized that four questions must be answered in the affirmative to safeguard against the misuse of non-mutual collateral estoppel:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Garrity*, 135 A.3d at 459.

---

[3] "Offensive non-mutual collateral estoppel" describes the situation where the new litigant is a party-plaintiff, and "defensive non-mutual collateral estoppel" describes the situation where the new litigant is a party-defendant. *Parklane,* 439 U.S. at 329.

Plaintiff has deliberately constructed the Complaint to ensure those safeguards are in place such that Defendants become bound and compelled to honor their promises not only to Plaintiff but to the tens of thousands of other Maryland policyholders that have fallen victim to the catastrophic failure of USAA's governance and control over its automated pricing algorithm.

### A. The Complaint Involves Identical Issues for Defendants' Maryland Policyholders

The gist of the Complaint is that since August 17, 2009, Defendants have issued standardized contracts to Maryland policyholders promising one pricing algorithm while programing their computers to calculate the pricing through a different algorithm. Complaint at ¶42. The algorithmic differences between the contract and computers can be summarized as follows:

| Rating Factor | Pricing Algorithm | |
| --- | --- | --- |
| | **Per Contract** | **As Programed** |
| Not-At-Fault Accidents | Not Considered | Considered |
| At-Fault Accidents under $750 | Not Considered | Considered |
| Accidents After 3 Years | Not Considered | Considered |
| Accident Forgiveness Benefit | First At-Fault Accident | First At-Fault Accident over $750 |

The Complaint alleges that Plaintiff fell into this gap between the algorithm promised and the algorithm programed resulting in a current overcharge of $128.91. Complaint at ¶36 and ¶37. The Complaint further alleges that overcharges from Defendants' algorithmic blunder have been replicated and will continue to be replicated tens of thousands of times every year until a court orders Defendants to stop. Complaint at ¶43.

5

Computer-enabled algorithms are designed to drive consistency in outcomes. When the instructions programed into a computer are correct, the thousands or millions of outputs from the operation of that algorithm will be consistently correct. When the instructions programed into a computer are incorrect, the thousands or millions of outputs from the operation of that algorithm will be consistently incorrect.

In this case, Plaintiff alleges that Defendants programed an incorrect pricing algorithm into their computers. As a result, the computer spit out an incorrect price for Plaintiff's motor vehicle insurance policy – and for tens of thousands or perhaps hundreds of thousands of other motor vehicle insurance policies issued by Defendants to their Maryland policyholders over a span of more than a decade.

In short, the Complaint has gone to great lengths to allege that Defendants' governance and control failures over its pricing algorithm have resulted in an identical set of errors producing systematic, widespread, and long-term overcharging of Maryland policyholders.

### B. The Complaint Seeks a Final Judgment on the Merits

The Complaint seeks a final judgment on the merits in the form of a declaration of rights and associated injunction. Whether the matter resolves in a final judgment on the merits can only be determined for certain at the conclusion of the action.

### C. The Complaint Seeks to Make Defendants Parties to the Final Judgment

USAA operates through the four Defendant underwriting companies in the State of Maryland. Complaint at ¶15. Each of the four underwriting companies is named in the Complaint as a party-defendant such that each is positioned to be a party to the final judgment.

These Defendants operate under a common brand, share the same insurance rating and policy issuance systems, and jointly develop and maintain common rating plans, rating manuals and policy forms. Complaint at ¶16. Accordingly, when the pricing algorithm has been programed incorrectly for one Defendant, it has been incorrectly programed for all four Defendants.

### D. The Complaint Promotes a Fair Opportunity to be Heard

Plaintiff has made every effort to signal to Defendants this case is a "big deal" that should be defended thoroughly and vigorously despite the apparent $128.91 sticker price.[4]

First, Plaintiff brought this action in a court of general jurisdiction wherein defendants can avail themselves of full pleading, discovery, motion, and trial practice. Plaintiff did so by seeking equitable relief rather than monetary damages which would have been heard in small claims court.

Second, Plaintiff has posted warning signs throughout the Complaint that an adverse judgment for Defendants will cost them much more than a few hundred dollars. For example, Plaintiff states that he is suing "for the benefit of all others similarly situation." Complaint at Introduction. Similarly, Plaintiff has advised that his own calculations indicate Defendants' runaway algorithm "currently impacts some 80,000 Maryland policies resulting in an average overcharge of 10.5% or $245.70 per policy per year." Complaint at ¶22. Defendants themselves have worked through the math and concluded that the outcome of this case may be measured in the tens of millions of dollars. Notice of Removal at ¶15. Plaintiff has worked to leave Defendants no room to later claim they did not have notice of the gravity of this litigation or a fair opportunity to defend themselves.

---

[4] Outside of this Complaint, Plaintiff has provided Defendants with documentation that similar governance and internal control breakdowns exist in 39 other jurisdictions many reaching back more than a decade.

### III. Fairness, Efficiency, and Economy

By ensuring each of the four safeguards will be satisfied, this Complaint is intentionally structured and deliberately positioned to result in a final judgment creating an offensive non-mutual collateral estoppel to the benefit of all those overcharged by Defendants in Maryland since August 17, 2009. Plaintiff has selected this procedural path not to avoid removal under CAFA but to avoid the expense, complexities, and potential conflicts of interest inherent in the class action device. Complaint at ¶4 (calling "upon the equitable powers of this Court to guide USAA to do the right thing for its members in a manner that is expeditious, economical, and fully restorative"). Perhaps most important to Plaintiff, he would very likely be unable to represent himself in a class action.

Should the Complaint be successful in creating an offensive non-mutual collateral estoppel on the merits, it is a short and very efficient procedural step for the Frederick County Circuit Court to use this action to enjoin Defendants to correct the errant pricing algorithm for all others that have been overcharged in the State. Indeed, a Maryland court of general jurisdiction has broad power to issue an injunction against a party to achieve such complete justice:

> Subject to the rules in this Chapter, the court, at any stage of an action and at the instance of any party or on its own initiative, *may grant an injunction upon the terms and conditions justice may require.*
>
> Maryland Rule 15-502(b) (emphasis supplied).

*See Walters v. Marathon Oil Co.*, 642 F.2d 1098, 1100 (7th Cir. 1981) ("[a]n equity court possesses some discretionary power" to fashion a remedy "to do complete justice"); *see also Riffin v. Baltimore County*, 985 A.2d 612, 621 (Md. App. 2010) (reviewing history of authority of Maryland Courts to issue injunctions *sua sponte*).

In *Hecht Co. v. Bowles*, 321 U.S. 321 (1944) (quoted by *State v. Neiswanger Mgmt. Servs., LLC*, 457 Md. 441, 471, 179 A.3d 941, 960 (Md. 2018)), the U.S. Supreme Court similarly noted the flexible nature of the injunction as an ideal device to promote justice as well as practicality:

> The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.
>
> *Id.* at 329 – 330.

## IV. Conclusion

Defendants have relied upon the Class Action Fairness Act to remove a complaint that is not a class action. Accordingly, this matter is subject to remand to the Circuit Court for Frederick County, Maryland.

Respectfully submitted,

_____/s/_____
Jason M. Schupp
Plaintiff, proceeding *pro se*
Bar No. 23693 (Inactive)
9006 Bush Creek Circle
Frederick, Maryland 21704
240-357-8914
jason.schupp@betterins.org